# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMES L. KEYS,

      Plaintiff,

      v.

SHAUN DONOVAN,

      Defendant.

Civil Action No. 13-1469 (JEB)

## MEMORANDUM OPINION

*Pro se* Plaintiff James L. Keys has filed a two-page Complaint in which he alleges retaliation by, and a hostile work environment at, the Department of Housing and Urban Development. More specifically, Keys alleges that after he settled an Equal Employment Opportunity complaint in December 2011, he received a lower performance rating and no performance bonus and had responsibilities taken away. He also claims that his EEO complaint precipitated harassment from his managers. Secretary of HUD Shaun Donovan now moves for dismissal or, in the alternative, for summary judgment. Although the Court concurs that the harassment pled here does not rise to the level of a hostile work environment, it believes that Plaintiff's retaliation cause of action is sufficient to survive dismissal and entitle him to some discovery. Summary judgment in these circumstances, moreover, is premature. The Court, accordingly, will grant the Motion in part and deny it in part.

## I.      Background

According to Plaintiff's brief Complaint, which the Court must presume true for purposes of this Motion, Keys "filed an EEO case in September 2011 for denial of Temporary

Promotion." Compl. at 1. Given that HUD is the named Defendant, the Court assumes Plaintiff

worked at the Agency, although he never so alleges. Fortunately, Defendant's attachments

confirm this. See, e.g., Mot., Att. A (Complainant's Affidavit) ("I, James L. Keys, am an

employee of the Housing and Urban Development . . . ."). After the Agency agreed to a

settlement, Keys found that he subsequently "received a lowered performance rating [for FY

2011] from past years and no performance bonus as retaliation for filing an EEO complaint."

Compl. at 1. In addition, after the settlement "in December 2011, [his] grade controlling duties

were taken away by [his managers.]" Id. at 2. He administratively appealed, but without

success. Id. at 1. Keys also alleges that he "was subjected to harassment by both managers who

started to question my grade, question my Telework schedule and started to isolate me from

other employees." Id. at 2. This caused "an enormous amount of mental stress, heart

palpitations and loss of sleep . . . ." Id.

As a result, Keys brought this suit, which HUD now moves to dismiss. In the alternative,

it contends that summary judgment is appropriate.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a

complaint fails "to state a claim upon which relief can be granted." In evaluating Defendant's

Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must

grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow

v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United

States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens

Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The notice-pleading rules are "not

meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336,

347 (2005), and he must thus be given every favorable inference that may be drawn from the allegations of fact.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)).  Although a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555-56 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Here, HUD has also moved for summary judgment.  Under Rule 56(d), a court may deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion adequately explains why, at this point in time, it cannot present facts needed to defeat the motion.  See Strang v. United States Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989).  Rule 56(d) is "intended to prevent railroading a non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery."  Milligan v. Clinton, 266 F.R.D. 17, 18 (D.D.C. 2010) (citations and internal quotation marks omitted).

Plaintiff includes such a showing in his Opposition pleadings. See Opp., Exh. 1 (Affidavit of James L. Keys). Although HUD responds that Keys's affidavit does not "identify specific facts that are discoverable to support his claims," Reply at 2, the Court does not agree. Keys avers, for example, that discovery would show that his performance was "Outstanding," rather than "Fully Successful," Keys Aff. at 1; this would undermine Defendant's argument that the latter rating was legitimate, as opposed to pretextual. Under the "generous approach" used to consider a Rule 56(d) affidavit for additional discovery, Convertino v. DOJ, 684 F.3d 93, 102 (D.C. Cir. 2012) (citation and internal quotation marks omitted), the Court concludes that summary judgment would be premature at this juncture and will consider Defendant's arguments under the motion-to-dismiss standard only. See id. at 99 ("Consistent with the salutary purposes underlying Rule [56(d)], district courts should construe motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter.") (quoting Resolution Trust Corp. v. N. Bridge Assocs., 22 F.3d 1198, 1203 (1st Cir. 1994)) (internal quotation marks omitted).

The Court believes this result particularly appropriate given that *pro se* parties deserve a significant amount of leeway in filing pleadings. See, e.g., Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999) ("[c]ourts must construe *pro se* filings liberally"); Voinche v. FBI, 412 F. Supp. 2d 60, 70 (D.D.C. 2006) ("[t]his Court gives *pro se* parties the benefit of the doubt and may ignore some technical shortcomings of their filings").

**III.    Analysis**

Although *pro se* Plaintiff lumps all of his allegations into one long paragraph, Defendant correctly teases out the two claims here: HUD retaliated against Keys (1) by giving him a lowered performance rating and no performance bonus and by taking job responsibilities away

4

from him; and (2) by subjecting him to a hostile work environment.  See Mot. at 1.  The Court addresses each separately.

A.  Retaliation

Title VII makes it illegal for an employer to discriminate against an employee because the employee "opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge . . . or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  To bring a claim for retaliation under Title VII, Plaintiff must allege that: (1) he engaged in a statutorily protected activity; (2) his employer took an adverse personnel action against him; and (3) a causal connection exists between the two.  Carney v. Am. Univ., 151 F.3d 1090, 1095 (D.C. Cir. 1998).

Plaintiff adequately pleads each element here, although the third one is a close call.  First, he alleges that he filed an EEO case in September 2011 for denial of promotion, which was settled in December 2011.  See Compl. at 1-2.  Statutorily protected activities include "opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment."  Coleman v. Potomac Elec. Power Co., 422 F. Supp. 2d 209, 212 (D.D.C. 2006) (citation omitted).  "[T]he plaintiff must be opposing an employment practice made unlawful by the statute under which [he] has filed [his] claim of retaliation."  Lemmons v. Georgetown Univ. Hosp., 431 F. Supp. 2d 76, 91-92 (D.D.C. 2006).  Although Plaintiff never alleges in this suit what the basis of his original EEO complaint was, HUD does not contest that it concerned something covered by Title VII.  And, indeed, an attachment to its Motion demonstrates that Keys cited race, color, sex, and age in his initial filing.  See Mot., Att. D (Informal Complaint of Discrimination) at 1-2.

Second, Keys alleges that he received a lowered performance rating and no performance bonus and that he was deprived of certain job responsibilities.  See Compl. at 1-2.  "[T]he effect of a poor evaluation is ordinarily too speculative to be actionable.  If, however, that evaluation determines the bonus, . . . then the employee may show the evaluation caused an objectively tangible harm." Douglas v. Donovan, 559 F.3d 549, 553 (D.C. Cir. 2009) (citations omitted).  Similarly, adverse actions may include "[w]ithdrawing an employee's supervisory duties" or a "reassignment with significantly different responsibilities." Czekalski v. Peters, 475 F.3d 360, 364 (D.C. Cir. 2007) (citations omitted).

Third, Plaintiff contends that these adverse actions constituted retaliation for his EEO filing and settlement.  To establish a causal connection between the protected activity and the termination – in the absence of direct evidence – a plaintiff may show "that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985).  In other words, mere temporal proximity may establish causation.  In determining what constitutes such proximity, the Supreme Court has stated: "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (quoting O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001)) (emphasis added); see also Singletary v. District of Columbia, 351 F.3d 519, 525 (D.C. Cir. 2003) ("[T]his circuit has held that a close temporal relationship may alone establish the required causal connection.").

Although "neither the Supreme Court nor the [D.C. Circuit] has established a bright-line three-month rule," Hamilton v. Geithner, 666 F.3d 1344, 1357-58 (D.C. Cir. 2012), this Circuit has generally found that such a gap between the protected activity and the adverse employment action negates the temporal proximity needed to prove causation. See Taylor v. Solis, 571 F.3d 1313, 1322 (D.C. Cir. 2009) (rejecting interval of two and a half months as establishing temporal proximity and citing, with approval, cases that did not find temporal proximity when two to three months elapsed between protected activity and adverse employment action); see also Tressler v. Amtrak, No. 09-2027, 2012 U.S. Dist. LEXIS 170304, at *35 (D.D.C. Nov. 30, 2012) (explaining that five- or ten-month gap was too lengthy to establish necessary temporal proximity).

This issue is more difficult than the first two, largely because Plaintiff's Complaint is somewhat muddled. The Complaint alleges, "After my settlement in December 2011, my grade controlling duties were taken away by Paul Scott and Nelson Bregon and I was subjected to harassment by both managers . . . ." Compl. at 2. Both managers, Keys states, "have a history of retaliation and problems giving proper performance ratings." Id. It also appears that Plaintiff received his lowered rating in March 2012. Id. at 1. Read in the light most favorable to him, Plaintiff's allegations just clear the bar. At the most, there is a three-month interval between the settlement and Plaintiff's receipt of his performance rating; in fact, Defendant's Motion suggests it is slightly less. See Opp. at 2-3 (settlement executed December 13, 2011, and rating received on March 6, 2012). In addition, March 6 is the date of the receipt of the rating, but Keys's Complaint implies it may have been completed earlier, but that he was not informed until March. See Compl. at 1. The Complaint, moreover, also implies – depending on how the word "[a]fter" in the second sentence of this paragraph is construed – that certain job responsibilities may have

been removed from Plaintiff _right after_ the settlement.  Although Plaintiff certainly obtains the benefit of the doubt here, he should be aware that to defeat summary judgment he will have to provide evidence of the specifics of his causation argument.

B.  Hostile Work Environment

While Keys's retaliation claim may have narrowly survived, his hostile-work-environment cause of action does not fare as well.  To prevail on such a claim, a plaintiff must demonstrate that he faced "'discriminatory intimidation, ridicule, and insult'" that was "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Ayissi-Etoh v. Fannie Mae, 712 F.3d 572, 577 (D.C. Cir. 2013) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).  In evaluating a hostile-work-environment claim, the Court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance."  Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)).  "The Supreme Court has made it clear that 'conduct must be extreme to amount to a change in the terms and conditions of employment.'"  George v. Leavitt, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting Faragher, 524 U.S. at 788).  By adhering to these standards, the Court thereby "ensure[s] that [employment-discrimination law] does not become a general civility code" that involves courts in policing "the ordinary tribulations of the workplace."  Faragher, 524 U.S. at 788 (citation and internal quotation marks omitted).

In this case, Keys's only allegations are that he "was subjected to harassment by both managers who started to question my grade, question my Telework schedule and started to isolate me from other employees."  Compl. at 2.  HUD is correct that these complaints do not, as

a matter of law, rise to the level of conduct that is "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Harris, 510 U.S. at 21; see, e.g., Leavitt, 407 F.3d at 408, 416–17 (statements by three employees over six-month period that plaintiff should "go back where she came from," separate acts of yelling, and hostility did not rise to level of severity necessary to find hostile work environment); Nurriddin v. Bolden, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (dismissing hostile-work-environment claim where "disparaging remarks, criticisms of [plaintiff's] work, and other negative comments do not sufficiently demonstrate a significant level of offensiveness"; "Nor can the removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management be characterized as sufficiently intimidating or offensive in an ordinary workplace context.") (citations omitted).

## IV.    Conclusion

For the reasons articulated herein, the Court will issue a contemporaneous Order granting Defendant's Motion in part and denying it in part.


/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  April 22, 2014