**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JAMES L. KEYS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SHAUN DONOVAN,**<br><br>**Defendant.** | **Civil Action No. 13-1469 (JEB)** |

**MEMORANDUM OPINION**

*Pro se* Plaintiff James Keys is an employee of the Department of Housing and Urban Development. In this employment-discrimination case, he alleges that HUD superiors retaliated against him for an Equal Employment Opportunity complaint that he filed in 2011. Specifically, he claims that they created a hostile work environment, took away certain of his job responsibilities, and gave him a lower performance rating. The Court previously dismissed Plaintiff's hostile-work-environment claim, but granted him the opportunity to proceed on the others. Discovery now complete, HUD has filed a Motion for Summary Judgment. Because no reasonable jury could find that the agency retaliated against Keys, the Court will grant the Motion.

## I. Background

On a motion for summary judgment, the Court must view the facts in the light most favorable to Keys, the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Yet, because Plaintiff failed to submit a separate statement of facts identifying genuine issues in dispute, as is required by LCvR 7(h), the Court will treat as true those facts identified in Defendant's Statement. See Lu v. Lezell, 45 F. Supp. 3d 86, 92 (D.D.C. 2014)

(finding most of defendant's facts to be deemed admitted for plaintiff's failure to comply with LCvR 7(h)). In any event, none of Plaintiff's arguments turns on a dispute regarding these facts.

From February 2011, Keys was employed as a GS-14 Administrative Management Specialist in HUD's Field Policy and Management Department. See Mot., Exh. 9 (Notice of Appeal to the EEOC) at ECF p.5. Although his supervisor, Paul Scott, never provided a formal position description for him, his job responsibilities included tasks relating to human resources, administrative management, and labor disputes. See id. at ECF p.6.

In September 2011, Plaintiff filed an EEO complaint alleging a number of discrimination-related grievances. Specifically, Keys claimed that Scott had failed to create a performance plan or position description for him, was frequently disrespectful, and had inappropriately denied him a temporary promotion on account of his race. See Mot., Exh. 7 (First EEO Complaint) at 2. HUD and Plaintiff subsequently settled the dispute in December 2011. See Mot., Exh. 3 (Settlement Agreement) at 4. Pursuant to the settlement, HUD, *inter alia*, transferred Plaintiff to a new supervisor, Nelson Bregon, effective December 13. See id. at 2, 4. Plaintiff, in turn, agreed to "release . . . his right to file any complaint . . . against the Department . . . that was or could have been raised in connection with [his discrimination claim]." Id. at 2.

Keys thereafter complained to Bregon that he had not received a performance rating or position description for Fiscal Year 2011, both of which he should have obtained while working under his previous supervisor, Scott. See Mot., Exh. 12 (Deposition of James Keys) at 118:2-119:17; 121:25-122:21. In response, Bregon worked with Plaintiff to create a list of performance standards, and they agreed that Bregon would evaluate Keys based on those standards after he was under Bregon's supervision for at least ninety days. See id. at 147:16-21; Mot., Exh. 2

(Affidavit of Nelson Bregon), ¶ 2. Bregon entered these standards into the Employee Performance Planning and Evaluation System (EPPES) on January 19, 2012. See Mot., Exh. 17 (FY 2011 Performance Appraisal) at 1.

On February 8, 2012, Bregon and Keys met to discuss the 2011 performance rating, and Bregon informed Keys that he intended to rate his performance as "fully successful." See Mot., Exh. 15 (February 8- March 6, 2012, E-mail Correspondence between Bregon and Keys) at 1. Bregon had the option of assigning Plaintiff one of five "summary ratings" ranging from "unsatisfactory," the lowest rating, to "outstanding," the highest. See FY 2011 Performance Appraisal at 1. Finding Plaintiff had performed somewhere in between, Bregon considered the "fully successful" rating appropriate as he had worked at a sufficient level of competence, but had not exceeded expectations. See id.; Bregon Aff., ¶ 4. Plaintiff nonetheless believed that this rating was inaccurate; because Bregon had not been his supervisor during the 2011 rating period, Keys felt that he lacked sufficient information to rate him. See Mot., Exh. 13 (Deposition of Nelson Bregon) at 42:16-43:7; Keys Dep. at 129:1-18. In an e-mail after the meeting, Keys thus requested that Scott rate him instead. See February 8- March 6, 2012, E-mail Correspondence between Bregon and Keys at 1.

On March 1, Plaintiff had not yet received Scott's evaluation, and he again complained to Bregon about it. See ECF No. 5 (Defendant's Motion to Dismiss and for Summary Judgment), Exh. 5 (March 1-6, 2012, E-mail Correspondence between Keys and Bregon) at 3. Plaintiff reiterated his request – made previously on February 8, 2012 – that Scott be the one to rate his performance. See id. 1-2; Keys Dep. at 129:1-18.

On March 6, 2012, Bregon reported that Scott had also concluded that during FY 2011, Keys performed at a "fully successful" level. See March 1-6, 2012, E-mail Correspondence

between Keys and Bregon at 1; Mot., Exh. 14 (Affidavit of Paul Scott), ¶ 3. Bregon incorporated this input with his own assessment, filed a "fully successful" rating in EPPES, and forwarded the final rating to the reviewing official. See Mot., Exh. 17 (Keys's Performance Rating) at 3. Scott based his rating of Keys on the amount of oversight he had required to complete his assignments and on an error Plaintiff had committed. See Scott Aff., ¶ 3. Scott also added that, although Plaintiff did all of the work he had been assigned, "there was nothing distinguished in his performance." Id.

Believing that this rating was unfairly retaliatory, Plaintiff initiated the administrative process in March 2012 by seeking EEO counseling and by filing an informal EEO complaint. See Keys Dep. at 101:23-102:23; Mot., Exh. 5 (Informal EEO Complaint). His sole charge was that his lower performance rating for FY 2011 was given in retaliation for his prior EEO activity. Ultimately, on appeal, the EEOC concluded that HUD had articulated legitimate, nonretaliatory reasons for its performance rating and that such reasons were not pretexts for retaliation. See Mot., Exh. 10 (June 25, 2013, EEOC Decision) at 2. Keys then filed this suit on September 26, 2013, alleging that HUD had retaliated against him by taking away his job responsibilities, creating a hostile work environment, and giving him a lower employment evaluation, thereby depriving him of a performance bonus.

The agency moved to dismiss the action in February 2014. See ECF No. 5. In granting the motion as to the hostile-work-environment claim, the Court found as a matter of law that Keys had not alleged facts that rose to the level required. See Keys v. Donovan, 37 F. Supp. 3d 368, 374 (D.D.C. 2014). Plaintiff's Complaint, however, did overcome Rule 12(b)(6)'s low bar as to his remaining allegations. Given that he was *pro se*, moreover, the Court allowed Keys a

"significant amount of leeway in filing [his] pleadings." Id. at 371. He was thus permitted to take discovery in order to corroborate his other retaliation claims.

That process now complete, the agency has once again filed a dispositive motion. This time it seeks summary judgment; Plaintiff opposes and asks for additional discovery.

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). On a motion for summary

judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-movant, in other words, is required to provide evidence that would permit a reasonable jury to find in his favor. See Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

## III. Analysis

In moving for summary judgment, HUD argues that no reasonable jury could conclude that Keys's loss of job responsibilities or his lower performance rating was in retaliation for his earlier EEO complaint. The Court discusses these issues in turn.

### A. Job Responsibilities

In his Complaint in this case, Plaintiff cursorily alleges that his "grade controlling duties" were taken away in retaliation for having filed an EEO complaint. See Compl. at 2. In moving for summary judgment, HUD argues, *inter alia*, that Keys failed to exhaust his administrative remedies on this issue prior to filing suit because he never included it in his EEO complaints. See Informal EEO Complaint; Mot., Exh. 6 (April 5, 2012, Notice of Right to File); ECF No. 5, Exh. H (Formal EEO Complaint); Mot., Exh. 1 (May 24, 2012, Notice of Acceptance) at 1; Mot., Exh. 4 (August 14, 2012, EEO Affidavit). Plaintiff's Opposition never refers to this aspect of his claim, and he apparently now limits his suit to the lower performance rating. The Court, therefore, will treat the job-responsibilities allegation as conceded under LCvR 7(b). See, e.g., Wright v. D.C., 799 F. Supp. 2d 1, 6 (D.D.C. 2011) (finding plaintiff's claims conceded for

failure to respond in her pleadings to defendant's arguments). In any event, even absent such forfeiture, HUD would likely be correct that there was no exhaustion. The Court, therefore, will grant it summary judgment on this issue.

B. Lower Performance Rating

Plaintiff next alleges that he received a reduced performance evaluation in retaliation for his filing an EEO complaint. Although he obtained a rating of "fully successful" for his FY 2011 review, Keys argues that it should have been higher. See, e.g., Opp. at 3. This lower rating, in turn, meant that he did not receive a performance bonus. See Compl. at 1.

Title VII claims of retaliation that are based upon circumstantial evidence, such as Keys's, ordinarily proceed in three steps. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); Kersey v. Washington Metr. Transit Auth., 586 F.3d 13, 16-17 (D.C. Cir. 2009). First, the plaintiff carries the initial burden of establishing a *prima facie* case of retaliation by a preponderance of the evidence. See Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Kersey, 586 F.3d at 17. Next, the defendant has the burden to rebut that *prima facie* case with evidence of "a legitimate, [nonretaliatory] reason for its actions." Kersey, 586 F.3d at 17 (quoting Reeves v. Sanderson Plumbing Prods, Inc., 530 U.S. 133, 142 (2000) (internal quotation marks omitted) (alteration in original)). "This burden is one of production, not persuasion; it can involve no credibility assessment." Reeves, 530 U.S. at 142 (internal quotation marks omitted). Finally, if the defendant has produced such evidence, then the plaintiff must show by a preponderance of the evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [retaliation]." Id. at 143 (internal quotation marks omitted). In other words, the plaintiff must prove "that the employer's asserted [non-retaliatory] reason was not the actual reason and that the employer intentionally [retaliated]

against the employee." Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008). As the Supreme Court has recently clarified, furthermore, "Title VII retaliation claims must be proved according to traditional principles of but-for causation." Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013).

The three-step process differs slightly at the summary-judgment stage. At this point in the proceedings, if the defendant can offer a legitimate reason for the challenged action, then district courts may skip over the first step of the analysis, since in such circumstances "the *prima facie* case is a largely unnecessary sideshow." Brady, 520 F.3d at 494. The Court will thus first ask whether HUD has "asserted a legitimate, [non-retaliatory] reason" for its performance rating. Id. at 493; see also Moran v. U.S. Capitol Police Bd., 887 F. Supp. 2d 23, 31 (D.D.C. 2012) (applying Brady framework to retaliation claim).

The answer is an obvious yes. Bregon based his rating on his review of Keys's "self described accomplishments for the rating period in question," ultimately finding that "there was nothing that [he] could identify as excellent or outstanding." Bregon Aff., ¶ 4. Further, upon Plaintiff's request, Bregon reached out to Scott for his input, who also found Keys's performance to be "fully successful" because he had made a non-trivial mistake and required more supervision than is typical for an employee at his paygrade. See Scott Aff., ¶ 3; Mot., Exh. 11 (Deposition of Paul Scott) at 23:3-24:4; Keys Dep. 177:20-181:21. In sum, Bregon identified legitimate, non-discriminatory reasons for giving Plaintiff a less-than-outstanding rating.

The Court's next task is to determine whether Keys has produced sufficient evidence for a reasonable jury to find that Bregon's asserted reasons were mere pretexts for illegal retaliation. See Brady, 520 F.3d at 494; see also Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). As the D.C. Circuit has held, however, "'[E]ven if [the employee] show[s] that

[the asserted reason] was not the actual reason for his [adverse employment action], he still would have to demonstrate that the actual reason was a . . . discriminatory [or retaliatory] reason.'" Gilbert v. Napolitano, 670 F.3d 258, 261 (D.C. Cir. 2012) (quoting Brady, 520 F.3d at 496 n.4) (alterations in original); see also Cones v. Shalala, 199 F.3d 512, 519 (D.C. Cir. 2000) (evidence must be sufficient for a reasonable jury "to conclude that [the asserted] rationale was not just pretext, but pretext for discrimination") (emphasis in original). That is, Plaintiff's burden of "demonstrat[ing] that the proffered reason was not the true reason . . . merges with the ultimate burden of persuading the court that [he] has been the victim of intentional [retaliation]." Burdine, 450 U.S. at 256.

It is difficult to distill Keys's argument regarding pretext, but two predominant strands emerge. First, Plaintiff believes that Bregon did not follow HUD procedures relating to the timing or approval of his rating. See, e.g., Opp. at 4. Even if Keys is right that Bregon did not scrupulously comply with such policy, he has offered no evidence to show that such failure was in any way motivated by retaliation. Nor has he produced any basis for a jury to find that any other impropriety caused the lower rating. At the end of the day, the Court is not a "super-personnel department that reexamines an entity's business decisions," Nguyen v. Mabus, 895 F. Supp. 2d 158, 174-75 (D.D.C. 2012) (quoting Holcomb v. Powell, 433 F.3d 889, 897 (D.C. Cir. 2006)), and Title VII "does not hold employers liable for erroneous judgment, unless that judgment is motivated by an illegal discriminatory motivation." Phillips v. Holladay Prop. Servs., Inc., 937 F. Supp. 32, 37 (D.D.C. 1996), aff'd sub nom. Phillips v. Holladay Corp., No. 96-7202, 1997 WL 411695 (D.C. Cir. June 19, 1997).

Second, Keys complains that Bregon should not have relied on Scott's input since the latter was not favorably inclined to Plaintiff and had been the subject of his prior EEO complaint.

See First EEO Complaint at 2. Giving Scott a voice in the rating, Keys concludes, demonstrates its retaliatory nature. Yet, Keys himself requested – and later confirmed his request for – Scott's input in his review. See February 8- March 6, 2012, E-mail Correspondence between Bregon and Keys at 1; March 1-6, 2012, E-mail Correspondence between Keys and Bregon at 2. He cannot now gripe that HUD acceded to his wishes. Scott's input could not have lowered his rating, furthermore, because Bregon assigned the same rating of "fully successful."

Keys, therefore, has not provided any evidence from which a reasonable jury could conclude that HUD retaliated against him in its rating.

C. Discovery

As a last-ditch maneuver, Plaintiff presents what appears to be a request for further discovery, see Opp. at 13, 16, but he has failed to file the required affidavit or declaration. See Fed. R. Civ. P. 56(d). In any event, the initial scheduling order gave Keys several months for discovery, see ECF No. 18, and the Court thereafter permitted him to take additional depositions and obtain requested documents. See Minute Order of September 11, 2014. He has not explained why this is insufficient.

## IV. Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order granting Defendant's Motion for Summary Judgment.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: June 2, 2015